VIRGINIA RULISON WEBER, Plaintiff-Appellant, v. AMIEL CUETO, Defendant-Appellee (Marvin Darling, Defendant).

Fifth District   No. 5—89—0802

Opinion filed March 8, 1991.

David M. Duree, of O'Fallon, and Robert L. Carter, of Leritz, Reinert & Duree, P.C., of St. Louis, Missouri, for appellant.

Heyl, Royster, Voelker & Allen, of Peoria (Karen L. Kendall and Adrian E. Harless, of counsel), for appellee.

JUSTICE LEWIS delivered the opinion of the court:

This appeal arises out of the trial court's dismissal with prejudice of the first amended complaint of the plaintiff, Virginia Rulison Weber, against the defendants, Amiel Cueto and Marvin Darling. The trial court made an express finding that there was no just reason for delaying enforcement or appeal, and the plaintiff appealed pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)). Stating generally that her appeal raises the question whether her first amended complaint states a cause of action for defamation against the defendant Cueto, the plaintiff presents the following eight issues for our review:

"(1) Does the First Amended Complaint state a cause of action against Defendant Amiel Cueto?

(2) Is the Madison County Board a quasi-judicial body?

(3) Was the publication of the five page letter to the twenty-nine members of the Madison County Board absolutely privileged?

(4) Does the publication of the five page letter to the newspapers prevent the establishment of any alleged absolute privilege to publish the letter to the twenty-nine members of the Madison County Board?

(5) Is the charge of fornication constitutionally protected as a statement of opinion?

(6) Are the charges of the Class 3 felonies of conspiracy and official misconduct constitutionally protected statements of opinion?

(7) Are the charges of the Class 3 felonies of fraud and the systematic theft of tens of thousands of dollars from the Madison County Treasury constitutionally protected statements of opinion?

(8) Are the charges of the Class 3 felonies of forgery, intimidation, subordination [sic] of perjury and communicating a threat to a witness constitutionally protected statements of opinion?"

This lawsuit was precipitated by a five-page letter dated January 14, 1983, and written by the defendant Cueto concerning primarily the conduct of Donald Weber, who was at that time the State's Attorney of Madison County. The letter discussed, in part, conduct of both Donald Weber and Virginia Rulison, an employee in Donald Weber's office in his capacity as State's Attorney. Since the writing of the letter Virginia Rulison, who is not an attorney, has become Virginia Rulison Weber. The letter was addressed to the Honorable Andreas Matoesian as the Chief Circuit Judge of Madison County and is attached to the plaintiff's complaint and first amended complaint and incorporated therein by reference. The letter begins as follows:

"The Illinois Code of Professional Responsibility, Rule 1—103, imposes upon all members of the Illinois Bar the rigid duty to report: 'unprivileged knowledge of a violation of Rule 1—102(a)(3) or (4)'. Rule 1—102(a)(3) provides: 'A lawyer shall not engage in conduct involving moral turpitude'. Rule 1—102(a)(4) provides: 'A lawyer shall not engage in conduct involving dishonesty, fraud, deceit [sic] or misrepresentation'. The Code further provides that the reporting lawyer must: 'report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation'.

I have recently obtained knowledge of numerous such violations allegedly committed by Donald Weber, the State's Attorney of Madison County. The Code is rather vague as to the 'tribunal or other authority' to which the report must be made. Therefore, in order to ensure that I am not remiss in my duty as required by the Code of Professional Responsibility, I am making this report to three distinct 'authorities' or 'tribunals'

as listed below. Each such tribunal or authority is empowered to investigate or act on the reports, as indicated.

HONORABLE ANDREAS MATOESIAN: Judge Matoesian is the Chief Circuit Judge of Madison County. Because the alleged violations include at least seven indictable offenses and because the subject of the report is the State's Attorney of Madison County, I believe that the Code requires a report to Judge Matoesian. As I understand it, the Chief Judge then appoints the Illinois Attorney General to investigate.

MADISON COUNTY BOARD: Because the alleged violations include the theft, fraudulent misuse, or improper use of Madison County funds; [sic] I believe the Code requires a report to that tribunal. The Board can then decide what action to take with respect to the State's Attorney's budget appropriation.

DISCIPLINARY COMMISSION: Because the alleged violations include numerous violations of the Code of Professional Responsibility, I believe the Code requires a report to that tribunal.

### BACKGROUND INFORMATION

I must state at the outset that I have no direct, personal knowledge of any of the following information (except as to the allegations contained in the lawsuit Cook v. Frey, Weber, and Globe Democrat Publishing Company, 81—L—915, presently pending in St. Clair County). All information is based on what was told to me in my office on January 5, 1983[,] by a Mr. Marvin Darling [who is the other defendant herein]. Mr. Darling was the administrative assistant in the State's Attorney's Office for the first two years of Mr. Weber's term. Weber fired him in December, 1982. Prior to Weber's election in 1980, Mr. Darling served as the administrator in the City of Collinsville, over the department which Weber supervised as Collinsville commissioner. Weber and Darling had been close, personal friends for many, many years. As Weber's long-time best friend and confidant, as the administrator who ran Weber's office, Mr. Darling's information can only be seen as credible, truthful, and devastating."

On January 11, 1984, the plaintiff filed her complaint. In her first amended complaint, filed on January 26, 1987, the plaintiff alleged that the "[d]efendants caused this letter to be published to the Presiding Judge of the Circuit Court for Madison County, Illinois, all 29 members of the Madison County Board, the Illinois Attorney Regis-

tration and Disciplinary Commission, and various newspapers circulated generally in Madison County, Illinois." In a supplemental motion to dismiss filed on July 11, 1989, pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—619), the defendant Cueto said that his "statements were privileged on the basis that they were made pursuant to Defendant's ethical obligations as an attorney to report misconduct to a tribunal or authority," and that they are, therefore, not actionable. The defendant Cueto said further in the motion that the "statements were made to only judicial and quasi-judicial bodies."

In an order entered November 23, 1989, the trial court considered the defendant Cueto's supplemental motion to dismiss, stating that the sole issue before it "is whether the publication of the letter by Defendant, Cueto, is entitled to an absolute privilege, which bars the Plaintiff's cause of action." The trial court concluded that the publication of the letter to the Attorney Registration and Disciplinary Commission (hereafter referred to as 'ARDC'), to the chief judge of the Third Judicial Circuit, and to the Madison County Board was absolutely privileged. The trial court determined that the Madison County Board is "clearly a quasi-judicial/legislative body" to which an absolute privilege attaches. Therefore, the trial court allowed the defendant Cueto's motion, dismissing all counts against him with prejudice. Noting that it still had under advisement various motions filed by the defendant Darling, the trial court stated in the order that it would rule on them at a later date and found that, with respect to the dismissal of those counts directed against the defendant Cueto, there was no just reason for delaying enforcement or appeal. In its order the trial court did not address the plaintiff's allegation concerning publication of the letter to various newspapers circulated generally in Madison County, Illinois.

In her brief plaintiff raises no issue concerning the trial court's determination that the publication of the letter to the Chief Judge and to the ARDC was absolutely privileged, and we, therefore, do not consider any question relating to absolute privilege with respect to the communication to the chief judge or to the ARDC. Plaintiff does, however, assert that the publication of the letter to the members of the Madison County Board was not absolutely privileged, and we turn to that issue.

An absolutely privileged communication is one in respect of which, by reason of the occasion on which or the matter in reference to which it is made, no remedy can be had in a civil action. (*Cook v. East Shore Newspapers, Inc.* (1945), 327 Ill. App. 559, 64 N.E.2d

751.) A communication is absolutely privileged when its propagation is so much in the public interest that the publisher should speak fully and fearlessly. (*American Pet Motels, Inc. v. Chicago Veterinary Medical Association* (1982), 106 Ill. App. 3d 626, 435 N.E.2d 1297.) As a matter of public policy certain types of defamatory statements are deemed privileged so that the person making the statement will not be deterred from speaking by the threat of civil liability. (*Starnes v. International Harvester Co.* (1986), 141 Ill. App. 3d 652, 490 N.E.2d 1062.) When absolute privilege is granted, no cause of action for defamation lies against the person making the statement even if it is made with malice. (*Starnes*, 141 Ill. App. 3d 652, 490 N.E.2d 1062.) The defense of absolute privilege has been described as resting upon the idea that conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance that is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation. (*Weiler v. Stern* (1978), 67 Ill. App. 3d 179, 384 N.E.2d 762.) The privilege is " 'based upon a policy which regards the ends to be gained by permitting such statements as outweighing the harm which may be done to the reputation of others.' Restatement of Torts, Introductory Note to tit. B, ch. 25 (1938); see also *Cook v. East Shore Newspaper, Inc.* (1945), 327 Ill. App. 559, 64 N.E.2d 751." *Weiler*, 67 Ill. App. 3d at 181, 384 N.E.2d at 763.

The class of absolutely privileged communications is narrow and is practically limited to legislative and judicial proceedings and other acts of State, including communications made in the discharge of a duty under express authority of law. (*Larson v. Doner* (1961), 32 Ill. App. 2d 471, 178 N.E.2d 399; *Cook*, 327 Ill. App. 559, 64 N.E.2d 751.) The Restatement (Second) of Torts section 592A (1977) provides that "[o]ne who is required by law to publish defamatory matter is absolutely privileged to publish it." The comment to section 592A states that the rule provided therein "will apply whenever the one who publishes the defamatory matter acts under legal compulsion in so doing." Restatement (Second) of Torts §592A, Comment at 258 (1977).

Disciplinary Rule 1—101(a) of the Code of Professional Responsibility (87 Ill. 2d R. 1—101(a)) provides that "[a] lawyer is subject to discipline for the violation of the disciplinary rules of the Code of Professional Responsibility as hereinafter set forth." Disciplinary Rule 1—102 (87 Ill. 2d R. 1—102) states:

"(a) A lawyer shall not

(1) violate a disciplinary rule;

(2) circumvent a disciplinary rule through actions of another;

(3) engage in illegal conduct involving moral turpitude;

(4) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; or,

(5) engage in conduct that is prejudicial to the administration of justice."

Disciplinary Rule 1—103 (87 Ill. 2d R. 1—103) provides in part as follows:

"(a) A lawyer possessing unprivileged knowledge of a violation of Rule 1—102(a)(3) or (4) shall report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation."

These three disciplinary rules became effective July 1, 1980, and were in effect at the time the letter precipitating the instant suit was received. We note that, effective August 1, 1990, the supreme court of Illinois repealed the Code of Professional Responsibility and replaced it with the Illinois Rules of Professional Conduct (134 Ill. 2d Article VIII).

The Committee Commentary concerning these three disciplinary rules (87 Ill. 2d Rules 1—101, 1—102, 1—103, Committee Commentary, at 509) states in part, "Rule 1—101(a) makes explicit the mandatory nature of the disciplinary rules; their violation subjects the lawyer to disciplinary sanctions." These disciplinary rules are rules promulgated by the supreme court of Illinois. As was recently noted by the supreme court in *In re Himmel* (1988), 125 Ill. 2d 531, 533 N.E.2d 790, a lawyer, as an officer of the court, is duty-bound to uphold the rules in the Code of Professional Responsibility. Under Disciplinary Rule 1—103 a lawyer has the duty to report the misconduct of other lawyers. (*In re Anglin* (1988), 122 Ill. 2d 531, 524 N.E.2d 550.) If a lawyer violates the rule on reporting misconduct, imposition of discipline for such a breach of duty is mandated. See *Himmel*, 125 Ill. 2d 531, 533 N.E.2d 790.

We find instructive to some extent certain cases outside of Illinois in which a communication, alleged to be libelous, has been compelled by law or asserted by a defendant to have been so compelled. In *Harrison v. Nationwide Mutual Fire Insurance Co.* (E.D. Pa. 1983), 580 F. Supp. 133, the plaintiff sought compensatory and punitive damages for alleged libels and slanders relating to the defendant insurer's denial of benefits for loss arising from a fire. Under the "Unfair Insurance Practices Act" of Pennsylvania (Pa. Stat. Ann. tit. 40, §1171.5(a)(10)(xiv) (Purdon 1982)) the insurance company was obli-

gated to explain the basis for denial of a claim. The court looked to section 592A of the Restatement (Second) of Torts in determining the communication complained of absolutely privileged. In *Newman v. Legal Services Corp.* (D.C. Cir. 1986), 628 F. Supp. 535, 543, the court held that dissemination of statements pursuant to the Freedom of Information Act (5 U.S.C. §552(a)(3) (1982)) was absolutely privileged, stating, "Absent an applicable exception, the government must provide the requested documents. Because defendants were required to produce the document, that production maintains absolute immunity." In *Johnson v. Dirkswager* (Minn. 1982), 315 N.W.2d 215, the supreme court of Minnesota held that, where the defamatory material appeared in a letter terminating an employee, an absolute privilege prevailed, in part because the defendant representative of the government was required by law, pursuant to the mandate of the Data Privacy Act (Minn. Stat. §§15.162—.1671 (1978)), to disclose the defamatory material. In so ruling the court relied on section 592A of the Restatement (Second) of Torts.

In *Miller v. Lear Siegler, Inc.* (D. Kan. 1981), 525 F. Supp. 46, the defendant argued that the statements at issue were protected by an absolute privilege against an action for libel because they were required by the Federal securities laws. The court concluded that "when a statement is required by federal law, an absolute privilege must exist." (*Miller*, 525 F. Supp. at 59.) The court considered *Farmers Educational & Cooperative Union of America v. WDAY, Inc.* (1959), 360 U.S. 525, 3 L. Ed. 2d 1407, 79 S. Ct. 1302, in which the Supreme Court held that because the defendant television station was compelled by section 315 of the Federal Communications Act of 1934 to broadcast the allegedly libelous comments, it was absolutely privileged to do so, and a libel action could not be maintained against it. The court in *Miller* noted that the defendant in *WDAY, Inc.* had no control over the language used but was compelled by law to broadcast a specific statement without exercising any censorship. However, the defendant in *Miller*, the court said, had control over the form of the release in question although certain of the contents were required by Federal law. Further, the court observed, even if actual statements in the release were compelled by law, the allegedly defamatory implication was not so compelled. The court in *Miller* was "unable to find that the absolute privilege for statements compelled by federal law extends to protect allegedly libelous inferences when the defendant is able to exercise control over the form of the statement so as to state factual truth required without defamatory implications." *Miller*, 525 F. Supp. at 59.

■ In the instant case the information sought to be elicited by Disciplinary Rule 1—103(a) is, without question, greatly in the public interest, providing, as it does, protection to individuals and the public at large. Indeed, the underlying purposes of the disciplinary process are to maintain the integrity of the legal profession, to protect the administration of justice from reproach, and to safeguard the public. (*In re LaPinska* (1978), 72 Ill. 2d 461, 381 N.E.2d 700.) The preamble to the Illinois Rules of Professional Conduct (134 Ill. 2d Article VIII Preamble, Illinois Rules of Professional Conduct), which became effective, as we have already indicated, on August 1, 1990, recognizes as well the social importance of reporting misconduct by attorneys:

"The practice of law is a public trust. *** Lawyers therefore are responsible for *** maintaining public confidence in the system of justice *** by defending the integrity of the judicial system against those who would corrupt, abuse or defraud it.

* * *

Lawyers also must assist in the policing of lawyer misconduct. The vigilance of the bar in preventing and, where required, reporting misconduct can be a formidable deterrent to such misconduct, and a key to maintaining public confidence in the integrity of the profession as a whole in the face of the egregious misconduct of a few."

Under the mandatory reporting requirement of Disciplinary Rule 1—103(a), a lawyer is compelled to report "unprivileged knowledge" of a violation of Disciplinary Rule 1—102(a)(3) or (a)(4) or face disciplinary action that might result in the loss of the privilege to practice his or her profession and the means of earning a living. However, the degree of certainty of such "knowledge" of a violation required to be reported by the lawyer is not specified or in any way indicated in the rule or elsewhere in the Code of Professional Responsibility. Does an account given by a credible third person to an attorney amount to "knowledge" under Disciplinary Rule 1—103(a)? Does an account of a third person coupled with some corroborative detail from the reporting attorney's own experience suffice to constitute "knowledge" under the rule? Must the reporting attorney have directly observed the conduct in question in order to have "knowledge" of it? Disciplinary Rule 1—103(a) and the Code of Professional Responsibility are silent about the extent or kind of information that constitutes "knowledge" triggering the lawyer's absolute duty to report.

■ Similarly vague in Disciplinary Rule 1—103(a) is the requirement that such "knowledge" be reported to "a tribunal or other authority empowered to investigate or act upon such violation." Section

26 of "An Act to revise the law in relation to counties" (Act) (Ill. Rev. Stat. 1983, ch. 34, par. 432) provides in part that "[i]t shall be the duty of the county board of each county *** [t]o provide reasonable and necessary expenses for the use of the county board, county clerk, county treasurer, recorder, sheriff, coroner, *State's attorney*, superintendent of schools, judges and clerks of courts, and supervisor of assessment." (Emphasis added.) Section 35.1 of the Act (Ill. Rev. Stat. 1983, ch. 34, par. 605.1) provides in part that "[i]n addition to any other remedies provided by law, the County Board may recover any unauthorized payment from the person receiving it and may seek the assistance of the State's Attorney in that regard." In light of these powers and duties accorded to a county board by the legislature, it appears that the Madison County Board would be empowered to investigate the improprieties alleged by the defendant Cueto in his letter to it concerning improper use of funds by Donald Weber as the State's Attorney together with his employee in that office, the plaintiff herein. There has been no suggestion that the misconduct of Donald Weber alleged by the defendant in the letter of January 14, 1983, did not constitute a violation of Disciplinary Rule 1—102(a)(3) or (a)(4), as required by Disciplinary Rule 1—103(a). Thus, we conclude that the Madison County Board is, as is required by Disciplinary Rule 1—103(a), "a tribunal or other authority empowered to investigate or act upon" a violation of Disciplinary Rule 1—102(a)(3) or (a)(4).

■ Of greatest concern to us in determining whether an absolute privilege attaches to such a communication is the mandatory nature of the duty to report. The lawyer is compelled by Disciplinary Rule 1—103(a) to report his "knowledge" of another lawyer's violation of Disciplinary Rule 1—102(a)(3) or (a)(4). If a lawyer fails to comply with the rule, he or she faces professional discipline; if an attorney complies with the rule, he or she may have to defend a suit for defamation. With respect to the granting of absolute privilege to communications made in the discharge of a duty under express authority of law, we can make no meaningful distinction between the compulsion effected by a law enacted by the legislature and that effected by a disciplinary rule promulgated by the supreme court of Illinois. We recognize that the attorney making a report pursuant to Disciplinary Rule 1—103(a) controls the content of the report, unlike the radio or television station, for example, that may be required to broadcast certain statements without the opportunity of exercising any editorial control over the substance of the communication. However, inasmuch as Disciplinary Rule 1—103(a) places upon a lawyer an absolute duty to report certain violations in order to promote the public good but pro-

vides no guidance as to the nature or extent of the lawyer's "knowledge" and little guidance as to what constitutes a "tribunal or other authority" to which such violations are to be reported, we hold that the communication made by the defendant Cueto to the members of the Madison County Board pursuant to Disciplinary Rule 1—103(a) is cloaked with an absolute privilege.

Although that communication made numerous references to a nonattorney, the plaintiff herein, it is readily apparent that the report concerning the attorney Donald Weber would be incomplete and, to some extent, incomprehensible had references to the plaintiff been omitted. An incomplete or incomprehensible report would render the duty to report under Disciplinary Rule 1—103(a) unfulfilled, the attorney subject to professional discipline for failure to comply with the rule, and the purpose of the rule unsatisfied. Therefore, we conclude that such references to a nonattorney do not fall outside the ambit of the privilege.

Section 2—619 of the Code of Civil Procedure, concerning involuntary dismissal based upon certain defects or defenses, provides that the defendant may, within the time for pleading, file a motion for dismissal or for other appropriate relief upon the ground that the claim asserted against him is barred by affirmative matter avoiding the legal effect of or defeating the claim. In light of our holding that the communication made by the defendant Cueto to the Madison County Board pursuant to Disciplinary Rule 1—103(a) is absolutely privileged, the trial court did not err in allowing the defendant Cueto's motion to dismiss insofar as it applies to the publication of the letter to the 29 members of the Madison County Board. We note that the trial court found the publication to the members of the Madison County Board absolutely privileged for the reason that it is a "quasi-judicial/legislative body." However, a reviewing court may affirm a correct decision for any reason appearing in the record, regardless of the basis relied upon by the trial court. (*Kelsey Axle & Brake Division v. Presco Plastics, Inc.* (1989), 187 Ill. App. 3d 393, 543 N.E.2d 239.) Inasmuch as we have already determined that the communication to the members of the Madison County Board is absolutely privileged, we need not consider whether the communication was absolutely privileged for the further reason that the Madison County Board under these circumstances is a quasi-judicial body. As we have stated, plaintiff has raised no issue concerning the trial court's determination that the publication of the letter to the chief judge of the Third Judicial Circuit and to the ARDC was absolutely privileged.

■■■ As we have indicated, in her first amended complaint plaintiff alleged that the defendant Cueto had caused the letter in question to be published to "various newspapers circulated generally in Madison County, Illinois." However, in its order the trial court made no finding with respect to the alleged publication of the letter to newspapers. We reverse the order of the trial court insofar as it dismisses the allegations in the counts against the defendant Cueto with respect to the publication of the letter to various newspapers circulated generally in Madison County and remand the cause for further proceedings with regard to the alleged publication of the letter by the defendant Cueto to "various newspapers circulated generally in Madison County, Illinois." We make no determination here concerning the sufficiency of the specificity of the pleading or any contention concerning the effect, if any, of the applicable statute of limitations, neither question having yet been presented to the trial court for its consideration.

In light of our disposition, we need consider none of the other issues plaintiff presents for review.

Affirmed in part; reversed in part and remanded.

HOWERTON and GOLDENHERSH, JJ., concur.