DOUGLAS MUCK *et al.*, Plaintiffs-Appellants, v. LESTER VAN BIBBER III *et al.*, Defendants-Appellees.

Fourth District No. 4—93—0162

Argued September 20, 1993.—Opinion filed October 7, 1993.

Timothy W. Kelly (argued), of Allison & Kelly, of Bloomington, for appellants.

Arthur G. Greenberg (argued), of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellees.

JUSTICE LUND delivered the opinion of the court:

Plaintiffs Douglas Muck and Laurie Muck brought this defamation complaint against defendants Lester Van Bibber III, Jane I. Van Bibber, Tena J. Olmstead, John M. Olmstead, and Citizens for Justice, Inc., a not-for-profit corporation. This case was previously before our court and remanded for a specific decision on dismissal of plaintiffs' complaint. (See *Muck v. Van Bibber* (1992), 223 Ill. App. 3d 830, 585 N.E.2d 1147.) On remand, the circuit court of McLean County dis-

missed the action, with prejudice, based upon a conclusion that the communication was absolutely privileged. Plaintiffs again appeal.

Both plaintiffs applied for an appointment as associate judge in the Eleventh Judicial Circuit of the State of Illinois (Eleventh Circuit). Under Supreme Court Rule 39, associate judges for circuit courts are appointed, subject to four-year terms, by circuit judges in each judicial circuit. (See 134 Ill. 2d R. 39.) Plaintiffs allege the following letter was mailed to judges of the Eleventh Circuit in November 1988:

"It has come to the attention of Citizens for Justice, Inc.[,] that Douglas and Laurie Muck have submitted their names to be considered for a judicial position in the 11th Judicial Circuit. Because we have received so many phone calls regarding alleged unethical improprieties conducted by Douglas and Laurie Muck, Citizens for Justice, Inc.[,] would like to go on record as being vehemently opposed to the acceptance of either Douglas or Laurie Muck for any judicial position in this or any Judicial Circuit.

One of the reasons Citizens for Justice, Inc.[,] was formed is to provide a direct line of communication between concerned citizens of this state and persons like yourselves, responsible for making judicial appointments. By bringing to your attention citizen's undesirability of certain individuals being considered for judicial positions, we believe we are helping to secure 'Justice for All' and helping to preserve the integrity of your judicialships [*sic*] through a more informed decision process. Thus, we share a common goal which is to maintain judicial administrations of your ethical equivalence.

If judgeships are considered exemplary positions, from which legal standards and practices are modeled, then it is of the utmost importance that this judgeship be granted to the best possible candidate. Please help us to help you by denying the appointment of Douglas or Laurie Muck to any position in this or any Judicial Circuit. We thank you for your consideration in these matters."

After a previous remand by our court, the circuit court entered an order dismissing an amended complaint, with prejudice, for failure to state a cause of action (Ill. Rev. Stat. 1991, ch. 110, par. 2—615) and specifically stating:

"FURTHER, this Court finds that on the specific fact situation set forth in the Amended Complaint the communication sent by the Defendants to the panel of Judges who were charged with appointing a new Associate Circuit Court Judge

was *absolutely privileged* [(emphasis in original)] and in support thereof states as follows:

> a. That the panel of Judges who were charged with the election or appointment of the Associate Circuit Court Judges would fall within the definition of a 'quasi judicial body' (*Parrillo, Weiss & Moss v. John Bernard Cashion*, 181 Ill. App. 3d 920 (1989)).
>
> b. That regardless of the characterization of the judicial panel set forth in the aforesaid paragraph that the communication in the instant case is so much in the public interest that as a matter of public policy it is absolutely privileged (*Weber v. Cueto*, 209 Ill. App. 3d 936 (1991))."

■ Whether an absolute privilege should exist depends upon the necessity for the privilege, as well as the character of the body receiving the communication. An absolute privilege provides complete immunity from civil action, even though the statements are made with malice, because public policy favors the free and uninhibited flow of such information. 53 C.J.S. *Libel and Slander* §58(a), at 110 (1987); *Starnes v. International Harvester Co.* (1989), 184 Ill. App. 3d 199, 203, 539 N.E.2d 1372, 1374.

As stated in *Weber v. Cueto* (1991), 209 Ill. App. 3d 936, 942, 568 N.E.2d 513, 516-17:

> "A communication is absolutely privileged when its propagation is so much in the public interest that the publisher should speak fully and fearlessly. [Citation.] As a matter of public policy certain types of defamatory statements are deemed privileged so that the person making the statement will not be deterred from speaking by the threat of civil liability. [Citation.] *** The defense of absolute privilege has been described as resting upon the idea that conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance that is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation. [Citation.] The privilege is ' "based upon a policy which regards the ends to be gained by permitting such statements as outweighing the 'harm which may be done to the reputation of others." [Citations.]' [Citation.]
>
> The class of absolutely privileged communications is narrow and is practically limited to legislative and judicial proceedings and other acts of State, including communications made in the discharge of a duty under express authority of law."

While judicial statements and statements to quasi-judicial bodies have been deemed absolutely privileged (see *Starnes v. International Harvester Co.* (1986), 141 Ill. App. 3d 652, 657, 490 N.E.2d 1062, 1065), the absolute privilege has been recognized in giving statements to county boards, Attorney Registration and Disciplinary Commissions, chief judges of the circuit court (see *Weber*, 209 Ill. App. 3d 936, 568 N.E.2d 513), the Illinois Judicial Inquiry Board (see *Starnes*, 141 Ill. App. 3d 652, 490 N.E.2d 1062), and law enforcement bodies (see *Starnes*, 184 Ill. App. 3d 199, 539 N.E.2d 1372). In *Starnes*, we listed various judicial proceedings where absolute privilege exists. *Starnes*, 184 Ill. App. 3d at 204, 539 N.E.2d at 1374-75.

 In the present case, the communication was sent to judges responsible for appointment of associate judges, generally to four-year terms. These same judges have a responsibility to decide when, and if, reappointments should be made. We recognize the importance of these decisions and their possible effect on the general public, as well as on the reputation of the judicial system. Public policy requires disclosure of any information that relates to a candidate's performance in office. Once an appointment is made, termination within the tenure period is not a simple procedure. The Illinois Judicial Inquiry Board would initially investigate and consider alleged misconduct, and then removal would be adjudicated by the Illinois Court's Commission.

Judges making the appointments are, by their profession, regularly faced with questioning evidence, as well as recognizing the necessity of keeping confidences. Both qualities contribute to the public-policy argument that the type of communication with which we are now dealing should be the subject of absolute privilege. The fact that copies of the defendant's letter were sent to the then-sitting associate judges does create concern, because those judges do not vote on associate judge selection or retention. However, the relationship that normally exists between the two levels of judges negates concern. In the selection process, the associate circuit judges' knowledge of the applicants' performances in court is a valuable source of information to the voting judges. The same attributes relating to the questioning of evidence and recognizing the necessity of keeping confidences are present at the associate level. As a result, associate circuit judges participate indirectly in the selection of those who are selected to sit with them.

Here, we do not have any general publication of defendants' representations. Letters were sent only to members of the judiciary. It is of utmost importance to obtain all relevant information in the process of selecting those who will be "judging" the public. Regardless of the

nature of the panel—judicial, quasi-judicial, or nonjudicial—in this case we hold that public interest requires absolute privilege, where allegations were directed only to members of the trial court.

Affirmed.

STEIGMANN, P.J., and GREEN, J., concur.