2019 IL App (1st) 190480-U

FOURTH DIVISION
November 14, 2019

No. 1-19-0480

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| AARON M. MURAUSKAS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 2018 M1 13843 |
| | ) | |
| MELISSA ROSA, | ) | Honorable |
| | ) | Mary Kathleen McHugh, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

JUSTICE REYES delivered the judgment of the court.
Presiding Justice Gordon and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Affirming the judgment of the circuit court of Cook County dismissing a defamation complaint with prejudice where the challenged communications were absolutely privileged.

¶ 2    Plaintiff Aaron M. Murauskas (Murauskas) appeals from an order of the circuit court of

Cook County dismissing with prejudice his defamation complaint against fellow police officer

Melissa Rosa (Rosa) pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735

ILCS 5/2-619(a)(9) (West 2018)).  Relying on *Razavi v. School of the Art Institute of Chicago*,

2018 IL App (1st) 171409 (*Razavi II*) – discussed below – the circuit court held that Rosa's

alleged statements were absolutely privileged.  For the reasons set forth herein, we affirm.

¶ 3                                         BACKGROUND

¶ 4      Murauskas is a sergeant and Rosa is an officer with the University of Illinois at Chicago (UIC) police department.  On January 12, 2018, Rosa sent an email to UIC police chief Kevin Booker (Booker), UIC police captain Stanley Grice (Grice), and other UIC departments and officials, including the Office of Access & Equity (OAE), requesting an investigation of her complaint against Murauskas for sexual harassment and retaliation in the workplace.  Although a complaint was attached to her email, it does not appear in the record on appeal.  In a second email on January 18, 2018, Rosa indicated that the OAE had promptly responded to her earlier communication.  She suggested, however, that the UIC police department did not take her allegations seriously.  Rosa stated that she realized that Murauskas's actions were criminal, and she requested:  "Please investigate this already or contact the police department who will."

¶ 5      Murauskas subsequently filed a verified complaint for defamation against Rosa in the circuit court of Cook County alleging that: Rosa had filed a false and unsigned complaint with the OAE; she made the allegations maliciously in retaliation for being "written up" by Murauskas for infractions; she refused to participate in a follow-up interview with "Internal Affairs" (which Murauskas has represented is the commonly-used name for the "University Police's Office of Professional Standards")[1]; the OAE found her allegations to be "unfounded"; and Internal Affairs closed the matter due to insufficient evidence.  Murauskas believed that Rosa refused to sign an affidavit because she did not want to face criminal charges for filing a false complaint.  According to Murauskas, Rosa knew that filing her complaint would prevent him from working overtime until the complaint was fully adjudicated, pursuant to departmental policy.  Since her complaint was dismissed on March 15, 2018, Murauskas alleged that he lost two months of overtime.  He also alleged that her complaint caused his immediate suspension

_____

[1] Murauskas has also represented that "Internal Affairs is part of the State Police."

from a "command position," resulting in his loss of additional compensation. Murauskas asserted that Rosa's complaint was not covered by any reporting privilege because (a) she neither signed nor attested to the complaint and (b) her complaint was "willful and malicious."

¶ 6    Rosa filed a motion to dismiss his defamation complaint pursuant to section 2-619(a)(9) of the Code, arguing that his claim was barred by her defense of absolute privilege. She asserted that an absolute privilege provided complete immunity from his civil action – even if her statements were allegedly made with malice – because "public policy favors the free and unhindered flow of such information." According to Rosa, the OAE was designated by UIC pursuant to federal law[2] to receive and investigate complaints of unlawful discrimination, harassment, and retaliation in education, employment, and UIC-sponsored programs and activities, as well as alleged violations of UIC's policy against sexual harassment, discrimination, and misconduct. Rosa represented that OAE investigations were conducted by the "Title IX Coordinator" and his designees, who determine when there have been policy violations based on a preponderance of the evidence standard and make recommendations to the appropriate UIC authorities for students, faculty, or staff. Asserting that the OAE was a quasi-judicial body and complaints filed with the OAE and related investigations are quasi-judicial proceedings, Rosa argued that her challenged statements were absolutely privileged.

¶ 7    In his response, Murauskas discussed the six powers recognized by courts as typically associated with a quasi-judicial body, *i.e.*, one to which absolute privilege would attach: (1) the power to exercise judgment and discretion; (2) the power to hear and determine or to ascertain facts and decide; (3) the power to make binding orders and judgments; (4) the power to affect the personal or property rights of private persons; (5) the power to examine witnesses, to compel the

---

[2] Rosa specifically cited Title IX of the Education Amendments Act of 1972 (20 U.S.C. § 1681, *et seq.*) and Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e, *et seq.*).

attendance of witnesses, and to hear litigation of issues on a hearing; and (6) the power to enforce decisions or impose policies. Murauskas asserted that the Title IX Coordinator lacked many of these powers, and thus Rosa's complaint was not protected by absolute privilege.

¶ 8 Rosa replied that she had emailed her complaint both to the OAE and to Booker and Grice from the UIC police department, wherein she reported facts and events which allegedly demonstrated Murauskas's criminal conduct. Rosa argued that the statements she made to law enforcement officials for the purpose of instituting legal proceedings were absolutely privileged. Asserting that she "had no control" over the police department's decision not to criminally investigate her claims, Rosa asserted that her simultaneous statements to the OAE and the UIC police were equally protected under the absolute privilege defense.

¶ 9 Murauskas subsequently filed an affidavit, wherein he represented that the OAE could require him to file an answer but could not discipline police officers. According to Murauskas, the OAE referred Rosa's complaint to Internal Affairs. Murauskas averred that Rosa knew that her complaint would cause Internal Affairs to "bench" him, which was the routine practice. He asserted his damages were due to the lack of overtime, which was caused by the complaint to Internal Affairs, not the complaint to the OAE. Murauskas further averred that Rosa knew her failure to sign the complaint would prevent Internal Affairs from disciplining her.

¶ 10 Murauskas also indicated that he did not oppose Rosa's motion to cite the recently-decided *Razavi II*. He argued, however, that the case did not compel dismissal of his action.

¶ 11 On February 7, 2019, the circuit court entered a written order granting Rosa's motion to dismiss Murauskas's complaint with prejudice under section 2-619(a)(9) of the Code. Finding that *Razavi II* was dispositive, the circuit court held that the alleged statements by Rosa to the OAE and/or to Internal Affairs were covered by absolute privilege. Murauskas timely appealed.

¶ 12                                  ANALYSIS

¶ 13    Murauskas contends that the circuit court erred in dismissing his defamation complaint pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2018)).  He asserts that Rosa's statements were not absolutely privileged because he was damaged by her communications to Murauskas's *employer,* not statements to law enforcement or to a quasi-judicial body.

¶ 14    As a preliminary matter, we address Murauskas's contention that the statement of facts in Rosa's brief violates Illinois Supreme Court Rule 341 because it is unsupported and argumentative.  Rule 341(h)(6) provides that the statement of facts "shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal[.]"  Ill. S. Ct. R. 341(h)(6) (eff. May 25, 2018).  We agree that portions of Rosa's statement of facts present argument and lack proper citation.  While we may strike a statement of facts when the improprieties hinder our review (*Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 9), the deficiencies in Rosa's brief do not impair our effective review.  We thus deny Murauskas's request to strike, but note that any statement that is argumentative or made without reference to the record shall be ignored.  *Beitner v. Marzahl*, 354 Ill. App. 3d 142, 146 (2004).

¶ 15    Turning to the merits, section 2-619(a)(9) of the Code allows for the dismissal of an action on the ground that "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim."  735 ILCS 5/2-619(a)(9) (West 2018).  A motion to dismiss under section 2-619 "admits well-pleaded facts, but does not admit conclusions of law and conclusory factual allegations unsupported by allegations of specific facts."  *Better Government Ass'n v. Illinois High School Ass'n*, 2017 IL 121124, ¶ 21.  Our task

when considering dismissal under section 2-619(a)(9) is ultimately to consider whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law. *Id.* We review a section 2-619 dismissal *de novo* (*id.*), meaning that "we perform the same analysis that a trial judge would perform" (*Tzakis v. Berger Excavating Contractors, Inc.*, 2019 IL App (1st) 170859, ¶ 19).

¶ 16 As discussed further below, the existence of an absolute privilege is an affirmative matter warranting the dismissal of a defamation action. *Busch v. Bates*, 323 Ill. App. 3d 823, 832 (2001). See also *Malevitis v. Friedman*, 323 Ill. App. 3d 1129, 1131 (2001) (noting that absolute privilege is an affirmative defense that may be raised and determined under section 2-619).

¶ 17 Murauskas filed a complaint against Rosa for defamation. "To state a cause of action for defamation, a plaintiff must present facts showing the defendant made a false statement about the plaintiff, the defendant made an unprivileged publication of that statement to a third party, and the publication caused damages." *Hadley v. Doe*, 2015 IL 118000, ¶ 30. "A defamatory statement is one that harms a person's reputation because it lowers the person in the eyes of others or deters others from associating with her or him." *Id.*

¶ 18 A defamatory statement is not actionable if it is privileged. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 585 (2006). There are two classes of privileged statements: those subject to an absolute privilege and those subject to a qualified or conditional privilege. *Id.* "When absolute privilege is granted, no cause of action for defamation lies against the person making the statement even if it is made with malice." *Mauvais-Jarvis v. Wong*, 2013 IL App (1st) 120070, ¶ 71. Rosa contends that her statements were subject to an absolute privilege. The question of whether a statement is privileged is a question of law which we review *de novo*. *Razavi II* at ¶ 22; *Malevitis*, 323 Ill. App. 3d at 1131.

¶ 19    "A communication is absolutely privileged when its propagation is so much in the public interest that the publisher should speak fully and fearlessly." *Weber v. Cueto*, 209 Ill. App. 3d 936, 942 (1991). The absolute privilege is based on a policy that "regards the ends to be gained by permitting such statements as outweighing the harm which may be done to the reputation of others." *Razavi II* at ¶ 20. See also *Weber*, 209 Ill. App. 3d at 942 (noting that the absolute privilege defense "rest[s] upon the idea that conduct which would otherwise be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance that is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation"). Certain types of defamatory statements are deemed privileged so that the individual making the statements will not be deterred by the threat of civil liability. *Id.* See, *e.g.*, *Thomas v. Petrulis*, 125 Ill. App. 3d 415, 423 (1984) (noting that a libel suit could chill an employee's "utilization of the Title VII mechanism because the employee would have to defend himself in a lengthy court battle"). In light of the complete immunity afforded by an absolute privilege, the classification of absolutely privileged statements is necessarily narrow. *Razavi II* at ¶ 20; *Layne v. Builders Plumbing Supply Co.*, 210 Ill. App. 3d 966, 969 (1992).

¶ 20    The absolute privilege "embraces actions required or permitted by law in the course of judicial or quasi-judicial proceedings as well as actions 'necessarily preliminary' to judicial or quasi-judicial proceedings." *Layne*, 210 Ill. App. 3d at 969 (citing *Parrillo, Weiss, & Moss v. Cashion*, 181 Ill. App. 3d 920, 928 (1989)). "Whether a given proceeding by an administrative body is quasi-judicial depends upon the powers and duties of the body conducting the proceeding and upon the nature of the proceeding." *Id.* at 926. Illinois courts have identified six powers that differentiate a quasi-judicial body from a body merely performing an administrative function: "(1) the power to exercise judgment and discretion; (2) the power to hear and determine or to

ascertain facts and decide; (3) the power to make binding orders and judgments; (4) the power to affect the personal and property rights of private persons; (5) the power to examine witnesses, to compel the attendance of witnesses, and to hear the litigation of issues on a hearing; and (6) the power to enforce decisions or impose penalties." *Id.* While it is not necessary for a body to possess all six powers in order to be considered a quasi-judicial body, "the more powers the body possesses, the more likely it is to attain quasi-judicial status." *Belluomini v. Zaryczny*, 2014 IL App (1st) 122664, ¶ 22. Illinois courts have found that bodies such as the Illinois Department of Insurance (*Parrillo*, 181 Ill. App. 3d at 927) and the Equal Employment Opportunity Commission (*Thomas*, 125 Ill. App. 3d at 421) are quasi-judicial. But see *Zych v. Tucker*, 363 Ill. App. 3d 831, 836 (2006) (noting that although the Office of Internal Affairs (OIA) "may well be the investigative arm of the sheriff in matters concerning the discipline of members of the sheriff's police department, nothing in the defendant's [section 2-619] motion supports the proposition that the OIA itself possesses any of the powers of a quasi-judicial body").

¶ 21    Murauskas contends that "Title IX office" at UIC does not constitute a quasi-judicial body because it lacks many of the powers enumerated above. We find, however, that it is not necessary herein to determine whether the OAE/Title IX office is a quasi-judicial body. Illinois courts have found that a communication made in the discharge of a legal duty is absolutely privileged, irrespective of whether the body at issue was deemed quasi-judicial. *Weber*, 209 Ill. App. 3d at 947 (holding that a communication to a county board made in compliance with a disciplinary rule in the code of professional responsibility for attorneys was cloaked with absolute privilege, regardless of whether the county board was a quasi-judicial body).[3] It has

---

[3] See also *Anderson v. Beach*, 386 Ill. App. 3d 246, 249-50 (2008) (finding that a police officer's letter to her superior officer regarding a colleague's alleged misconduct was absolutely privileged because departmental rules required her to report the misconduct, but her communications to officers outside of her chain of command were not protected); *Busch*, 323 Ill. App. 3d at 834 (concluding that the absolute

also "long been held that statements made to law enforcement officials, for the purpose of instituting legal proceedings, are granted absolute privilege." *Vincent v. Williams*, 279 Ill. App. 3d 1, 7 (1996). See also *Layne*, 210 Ill. App. 3d at 7 (finding that statements made to a police department concerning the plaintiff's alleged criminal conduct were absolutely privileged). As discussed below, the two *Razavi* cases – *Razavi v. Walkuski*, 2016 IL App (1st) 151435 (*Razavi I*), and *Razavi II* – guide our analysis herein.

¶ 22 The plaintiff Omar Shariat Razavi (Razavi) filed a defamation action against defendants Eva Walkuski (Walkuski) and Ariel Zekelman (Zekelman). *Razavi I* at ¶ 1. Razavi and the defendants were students at the School of the Art Institute (SAIC), a private university. *Id.* ¶ 3. After Walkuski reported to the SAIC campus security director that Razavi had sexually assaulted and stalked her, the director escorted Walkuski to the Chicago police department, where she filed an incident report. *Id.* Zekelman also reported to SAIC campus security that Razavi had sexually assaulted her. *Id.* Following a hearing before the student conduct board, Razavi was expelled; he then filed a defamation action against the defendants and SAIC. *Id.* ¶¶ 3-4. The defendants moved to dismiss, contending that the reports to SAIC campus security were absolutely privileged because they were made to law enforcement personnel. *Id.* ¶ 4. The circuit court denied the motion, finding that whether the absolute privilege applied to reports of sexual violence made to campus security was a question of first impression. *Id.*

¶ 23 As to the certified question of whether campus security should be considered law enforcement for purposes of an alleged victim's report of sexual violence on campus, the appellate court in *Razavi I* found that the underlying rationale of the absolute privilege as well as the public policy of helping prevent sexual assault on college campuses warranted treating

---

privilege applied where police officers who reported alleged misconduct by a crime scene technician faced "conflicting obligations," *i.e.*, "either fail to report and face disciplinary action or report perceived official misconduct and face a defamation action").

campus security as law enforcement. *Id.* ¶ 12. The appellate court further found that it was "manifestly counterintuitive" to penalize an individual for reporting an alleged incident of on-campus sexual violence to the school's security department. *Id.* ¶ 13.

¶ 24 The appellate court then considered whether "the victim made the report for the purpose of initiating legal proceedings." *Id.* ¶ 15. After noting the six powers identified with a quasi-judicial body, the appellate court observed that the privilege did not require university proceedings themselves to constitute a legal proceeding and that the act of reporting to a police officer did not itself constitute a legal proceeding; rather, the State's Attorney has the discretion to decide whether to file charges. *Id.* The appellate court noted that, "[i]n the context of reports to traditional law enforcement, courts presume that statements are made for the purpose of constituting legal proceedings, notwithstanding a defamation plaintiff's claim that the statements were false, maliciously motivated or made for a purpose unrelated to the institution of legal proceedings." *Id.* The appellate court concluded, "We see no reason to depart from this rationale and require courts to make a determination of fact as to the reporter's subjective intent when reports of sexual violence are first made to campus security." *Id.* The *Razavi I* court thus found that statements to campus security are absolutely privileged. *Id.*

¶ 25 Following remand, rather than focusing on campus security, Razavi alleged that Walkuski and Zekelman falsely or recklessly reported the alleged assaults to agents and employees of SAIC. *Razavi II* at ¶ 14. Walkuski and Zekelman again filed motions to dismiss, arguing that an investigation is a "continuum" and it would make little sense to apply different levels of privilege to the same statements made at different points in an investigation. *Id.* ¶ 15. After the circuit court granted the dismissals, Razavi argued on appeal that the process was not a "continuum" of any criminal investigation, nor was his disciplinary hearing "quasi-judicial" in

nature such that absolute privilege applied. *Id.* ¶ 23.

¶ 26 The appellate court initially noted that SAIC student handbook's policy on sexual assault, relationship violence, and stalking was adopted in accordance with a federal law which was passed to encourage greater transparency, enhance the victims' information and rights, and add requirements for educational institutions to address and prevent sexual violence on campus. *Id.* ¶ 25. The SAIC policy encouraged anyone subject to sexual assault, relationship violence, or stalking to report the incident promptly to the police and/or SAIC officials. *Id.* ¶ 27. Given the SAIC policy and applicable law – providing that generally once a privileged statement is made to law enforcement any subsequent restatements made in further of the investigation fall under the absolute privilege (*Razavi I* at ¶ 8; *Belluomini*, 2014 IL App (1st) 122664, ¶ 26) – the appellate court concluded that the victims' allegedly defamatory restatements to SAIC authorities and agents regarding the purported sexual assault and misconduct were absolutely privileged. *Id.* ¶ 34. The *Razavi II* court noted that while the SAIC investigation itself was not quasi-judicial, it was sufficient that it emerged out of a fully-protected initial report. *Id.*

¶ 27 In the instant case, Rosa contemporaneously submitted her complaint and follow-up email alleging sexual misconduct by Murauskas to both campus resources and to UIC police chief Booker and UIC police captain Grice. We thus reject Murauskas's assessment that Rosa "did not go to law enforcement, and did not consult campus security." Furthermore, his claim that she made defamatory communications to his "employer [and] not to law enforcement" ignores the fact that they both were employed by the UIC police department. Whether the UIC police is considered campus security or traditional law enforcement, the result under *Razavi I* remains the same. We adhere to this court's holding in *Razavi I* and find that by communicating her allegations to senior officers of the UIC police department, Rosa's statements were made for

the purpose of initiating legal proceedings, regardless of Murauskas's claim that her statements were false, maliciously motivated, and made for a purpose unrelated to the institution of legal proceedings. See *Razavi I* at ¶ 15. To the extent that the complaint attached to Rosa's January 12 email was not included in the record on appeal, such deficiency is construed against Murauskas, as the appellant. *E.g.*, *Tebbens v. Levin & Conde*, 2018 IL App (1st) 170777, ¶ 31 (noting that "[a]ny doubts or deficiencies arising from an incomplete record will be construed against the appellant"). Based on the foregoing, we conclude that Rosa's statements to the UIC police officials were absolutely privileged.

¶ 28    We further conclude that Rosa's statements to university departments and officials – including the OAE – were part of the same "continuum" and were entitled to the same protection. *Belluomini*, 2014 IL App (1st) 122664, ¶ 26 (noting that an "investigation is a continuum and it defies rational thinking to isolate certain portions of the investigation in order to apply different levels of privilege"). Her communications with the OAE regarding Murauskas's alleged actions appear to have been consistent with the university's federally-mandated policies and procedures regarding the reporting and investigation of purported sexual misconduct. See, *e.g.*, 34 C.F.R. § 106.8 (requiring educational institutions which receive federal funding to adopt and publish grievance procedures for the prompt and equitable resolution of student and employee complaints of sexual discrimination, including sexual violence and harassment). Under the *Razavi II* rationale, Rosa's statements made under these federally-mandated procedures are cloaked with the same privilege as if the statements themselves were legally required. *Razavi II* at ¶ 35. To hold otherwise would render UIC's investigatory procedures "toothless," since there would be no basis to proceed. *Id.* As the *Razavi II* court observed, an alleged victim's participation in these types of proceedings is in the

- 12 -

public interest. *Id.* ¶ 36. Furthermore, "it would be against public policy to force a victim of sexual assault to parse out what statements would or would not make her subject to a potential defamation lawsuit as she complies with the very policies and procedures of the institution." *Id.* ¶ 37.

¶ 29 Finally, we address Murauskas's argument that he was harmed by the Internal Affairs investigation, not the OAE/Title IX Coordinator's investigation, because Internal Affairs imposed limitations on his work opportunities and compensation while it conducted its investigation. Since Rosa had no control over the manner in which the OAE handled the investigation, including its alleged referral to Internal Affairs, we reject Muraskas's contention. See, *e.g.*, *Belluomini*, 2014 Il App (1st) 122664, ¶ 26.

¶ 30 For the reasons discussed above, we conclude that the ends to be gained by granting absolute privilege to Rosa's communications under the circumstances herein outweigh the harm to Murauskas's reputation or compensation. See *Razavi II* at ¶ 37. The circuit court properly dismissed Murauskas's complaint for defamation under section 2-619(a)(9) of the Code based on Rosa's defense of absolute privilege.

¶ 31                                    CONCLUSION

¶ 32 The judgment of the circuit court of Cook County dismissing Murauskas's defamation action with prejudice pursuant to section 2-619(a)(9) of the Code is affirmed.

¶ 33 Affirmed.