WILLIAM B. STARNES, Plaintiff-Appellee, v. INTERNATIONAL HARVESTER COMPANY, Defendant-Appellant (Robert D. Owen, Defendant).—WILLIAM B. STARNES, Plaintiff-Appellee, v. INTERNATIONAL HARVESTER COMPANY, Defendant (Robert D. Owen, Defendant-Appellant).

Fourth District    Nos. 4—85—0678, 4—85—0682 cons.

Opinion filed March 17, 1986.—Rehearing denied April 15, 1986.

William R. Jentes, Emily Nicklin, and David B. Bayless, all of Kirkland & Ellis, of Chicago (James R. Fruchterman, of counsel), for appellant International Harvester Company.

Theodore A. Boundas, Ellen J. Kerschner, Michael P. Tone, and Robert L. Suomala, all of Peterson, Ross, Schloerb & Seidel, of Chicago, and William S. Hanley, of Sorling, Northrup, Hanna, Cullen & Cohran, Ltd., of Springfield, for appellant Robert D. Owen.

Rex Carr, of Carr, Korein, Kunin, Schlichter & Brennan, of East St. Louis, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On June 18, 1982, plaintiff, William B. Starnes, a circuit judge of this State, filed a two-count complaint sounding in defamation, in the circuit court of Madison County against defendants, International Harvester Company and Robert D. Owen. On January 11, 1984, on defendants' motion, the venue was transferred to Sangamon County. That complaint was subsequently dismissed, and an amended two-count com-

plaint was filed on August 26, 1984. On August 2, 1985, the circuit court of Sangamon County denied defendants' motion to dismiss the complaint. On September 18, 1985, the court entered a finding that its order refusing to dismiss the complaint involved "a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of [the] litigation ***." (87 Ill. 2d R. 308(a).) On October 18, 1985, we granted separate motions of defendants for leave to appeal and consolidated the cases. We reverse the order of the circuit court refusing to dismiss count I and dismiss the appeal as to the ruling on count II.

The complaint alleged that (1) Owen was an attorney for International Harvester Company in a case in the circuit court of Madison County at which Judge Starnes presided; (2) sometime between March 13, 1980, and May 8, 1981, while acting as an agent of International Harvester Company, Owen presented to the Judicial Inquiry Board of the State of Illinois (JIB) letters and other memoranda charging Judge Starnes with judicial misconduct during the course of the foregoing case; (3) the documents presented to the JIB charged the judge with conduct criminal in nature; (4) the charges were malicious because Owen either knew they were false or made them with reckless disregard of their truth; and (5) Judge Starnes was damaged thereby. Count II alleged that Owen had uttered to others the same words contained in the documents sent to the JIB.

The trial court's order of September 18, 1985, stated the "question of law involved" (87 Ill. 2d R. 308) to be:

> "[W]hether communications with the Judicial Inquiry Board are absolutely privileged against claims of defamation so to preclude actions for libel or slander based thereon."

It is readily apparent that the stated question of law is determinative only as to count I. The thrust of count II is that the defamatory matter contained in the documents submitted to the JIB was uttered to other persons. Accordingly, our grant of leave to appeal as to that count was improvident and we dismiss the appeal as to that count.

As a matter of public policy, certain types of defamatory statements are deemed privileged so that the person making the statement will not be deterred from speaking by the threat of civil liability. When absolute privilege is granted, no cause of action for defamation lies against the person making the statement even if it is made with malice. (Restatement (Second) of Torts, ch. 25, topic 2, title B, Introductory Note, at 242-44 (1977).) When only qualified privilege is granted, the person making the statement is immune from liability unless some ele-

ment such as malice is present.

The JIB was established by article VI, section 15, of the Illinois Constitution of 1970 for the purpose of receiving or initiating complaints about and conducting investigations concerning State judges. Upon finding a reasonable basis to do so, the JIB is directed to file complaints with the Courts Commission, which is empowered to hear the charges and, if the charges are proved, to impose sanctions on the judges. The parties agree that the communications to the JIB referred to in count I of the complaint were at least conditionally privileged because they were alleged to be in criticism of a judge. Solely for the reason that a judge is a public official, the statements would have privilege absent a showing of malice. *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710.

■ However, count I alleged malice, and the question presented is whether the fact that the statements were made to the JIB makes them absolutely privileged. Plaintiff contends that the conditional privilege given complainants such as Owen is sufficient to permit them to speak without substantial fear and that if the statements are actually made with malice, the person making the statement should be subject to liability. Defendants contend that any exposure to liability is likely to discourage persons such as Owen from complaining. The issue is one requiring us to strike a balance. One consideration is the importance of encouraging people such as Owen to complaint and the deterrence from complaining that results from any exposure to liability for making the complaint. The other consideration is the harm that may result to persons like Starnes by unsubstantiated complaints being made. Although no case is directly in point, we conclude that stated Illinois public policy is to give greater weight to the first consideration and grant absolute privilege to complaints made to the JIB.

In Illinois, complaints made to certain types of governmental entities have been held to be absolutely privileged from giving rise to actions for defamation. In *Ritchey v. Maksin* (1978), 71 Ill. 2d 470, 376 N.E.2d 991, statements made in a criminal complaint verified by the defendant were held to have such a privilege. Similarly, in *Vogel v. Gruaz* (1884), 110 U.S. 311, 28 L. Ed. 158, a complaint made by a private citizen to a prosecutor that another had stolen money from him was held to be absolutely privileged. The court noted that a private citizen had a duty to report to the appropriate public official facts tending to show the commission of a crime. In *Harrell v. Summers* (1961), 32 Ill. App. 2d 358, 178 N.E.2d 133, the court followed *Vogel* and deemed the verification of a petition for mental commitment prepared by the State's Attorney to be an absolutely privileged statement.

Complaints made to governmental bodies which are not courts have also been held to have absolute privilege. Most recently, in *Thomas v. Petrulis* (1984), 125 Ill. App. 3d 415, 465 N.E.2d 1059, a complaint made to the Federal Equal Employment Opportunity Commission (EEOC) was held to be unqualifiedly immune from charges of defamation. The court recognized that not all complaints to administrative agencies had that immunity but if the agency had judicial powers, the same consideration requiring immunity for complaints to courts were operative. Agencies having those powers were described as quasi-judicial bodies.

The *Thomas* court stated:

"Six powers have been isolated as differentiating a quasi-judicial body from that performing merely an administrative function:

'1) [T]he power to exercise judgment and discretion; 2) the power to hear and determine or to ascertain facts and decide; 3) the power to make binding orders and judgments; 4) the power to affect the personal or property rights of private persons; 5) the power to examine witnesses, to compel the attendance of witnesses, and to hear the litigation of issues on a hearing; and 6) the power to enforce decisions or impose penalties.' (*Parker v. Holbrook* (Tex. Civ. App. 1982), 647 S.W.2d 692, 695, citing 1 Am. Jr. 2d *Administrative Law* secs. 167-73 (1962).)" (*Thomas v. Petrulis* (1984), 125 Ill. App. 3d 415, 419-20, 465 N.E.2d 1059, 1062.)

Citing *Parker v. Holbrook* (Tex. Civ. App. 1982), 647 S.W.2d 692, the court explained that not all six powers were necessary to constitute a quasi-judicial body but that the more such powers the body had the more likely it was to attain that status. The court noted that the EEOC lacked the power to make binding orders and judgments or to impose penalties. Rather, its function was to serve as the agency through which all Federal claims of employment discrimination must be brought before civil suit might be initiated. In fulfilling that function, the agency had the power to subpoena and examine witnesses, hear evidence and ascertain facts, and exercise judgment as to whether to use its power to bring or join in civil litigation sanctioning allegedly discriminating conduct.

In *Parker v. Kirkland* (1939), 298 Ill. App. 340, 18 N.E.2d 709, the board of appeals of Cook County which heard and determined objections to property tax assessments was deemed a quasi-judicial body, thus making utterances presented to the board absolutely privileged. Similar privileges arose in connection with statements to the Chicago

Board of Election Commissioners (*Kimball v. Ryan* (1936), 283 Ill. App. 456) and the Naturalization Bureau of the Department of Labor (*Krumin v. Bruknes* (1930), 255 Ill. App. 503). On the other hand, in *Richardson v. Dunbar* (1981), 95 Ill. App. 3d 254, 419 N.E.2d 1205, the court held that there was no showing made that the police committee of a city council was a quasi-judicial body, and statements made to that committee concerning conduct of that plaintiff were not absolutely privileged. Complaints to a city chief of police concerning alleged bribetaking by officers were held to have only qualified privilege. *Flannery v. Allyn* (1964), 47 Ill. App. 2d 308, 198 N.E.2d 563.

In *Allen v. Ali* (1982), 105 Ill. App. 3d 887, 435 N.E.2d 167, the First District stated that communications with private bar associations were not absolutely privileged because these private associations had no quasi-judicial or official disciplinary functions. However, the court stated that all communications with the Attorney Registration and Disciplinary Commission (ARDC) are absolutely privileged, because the ARDC is a quasi-judicial body which was created by Supreme Court Rule 751 *et seq.* (87 Ill. 2d R. 751 *et seq.*; as amended, see 103 Ill. 2d Rules 751 through 771) to administer attorney discipline. The ARDC has an administrator (87 Ill. 2d R. 752), an inquiry board (103 Ill. 2d R. 753(a)), a hearing board (103 Ill. 2d R. 753(c)), and a review board (103 Ill. 2d R. 753(d)). The administrator receives and investigates complaints. The administrator may refer complaints to the inquiry board which can further investigate those complaints or initiate investigations on its own. It must decide whether to dismiss the complaints or file such complaints with the hearing board which hears the matter and enters an order accordingly. That order may be appealed to the review board and, thereafter, under certain circumstances, to the supreme court.

The inquiry board of the ARDC is somewhat similar to the JIB. Both have the function of receiving complaints, making investigations, and initiating actions against persons who are officers of the court in the broad sense. In doing so, both must exercise judgment and discretion. Both have the power to examine witnesses. The JIB also has the subpoena power. Each has the power to enforce decisions only to the extent of charging respondents thus requiring them to undergo disciplinary proceedings. Neither has the power to make final determinations, except that no judge can be sanctioned by the Courts Commission without a complaint being filed by the JIB. Neither has the power to affect the personal or private rights of *private* persons.

The ARDC differs materially from the JIB in that the ARDC has power to initiate proceedings before a court, the Illinois Supreme

Court, while the JIB can only initiate proceedings before another administrative agency, the Courts Commission. No Illinois agency which neither has power to finally determine matters as to all parties nor the power to initiate proceedings before a court has been held to be a quasi-judicial body. Thus, although the JIB is very similar to a quasi-judicial body, we are not persuaded that it is a full-fledged quasi-judicial body.

■ Although the JIB does not qualify as a quasi-judicial body, the fact that it is very similar to one, when considered together with its constitutional mandate and viewed in the light of the public policy consideration involved, requires us to hold that those making complaints to the JIB do so with absolute privilege from suit for defamation. Article VI, section 15(c), of the Illinois Constitution of 1970 states that "[a]ll proceedings of the [JIB] shall be confidential except the filing of a complaint with the Courts Commission." The Illinois Supreme Court stressed the importance of the confidentiality of complaints brought before the JIB in *Owen v. Mann* (1985), 105 Ill. 2d 525, 475 N.E.2d 886, involving the principals in this case and arising from the same litigation.

When this cause was before the circuit court of Sangamon County after the original complaint had been dismissed but before the amended complaint was filed, the trial court entered a discovery order on July 19, 1984, requesting defendant Owen to produce various items, including Owen's correspondence with the JIB. Owen then filed an original petition in the supreme court against the trial judge, the Honorable Richard E. Mann, seeking a writ of *mandamus* or, in the alternative, a supervisory order requiring the judge to vacate the discovery order to the extent that it required production of communications between Owen and the JIB. On February 25, 1985, the supreme court ordered the writ to issue stating that holding these confidential materials discoverable "would eviscerate the protection afforded to complainants and witnesses, and possibly impede on-going investigations by the Board." *Owen v. Mann* (1985), 105 Ill. 2d 525, 534-35, 475 N.E.2d 886, 892.

The *Owen v. Mann* court noted that granting of the discovery when no complaint was before the court was probably erroneous but refused to rule on that basis. Rather it concluded that the matter was one of "vital importance" and if not then decided would likely arise again when a complaint was filed. (*Owen v. Mann* (1985), 105 Ill. 2d 525, 531, 475 N.E.2d 886, 890.) Accordingly, it ordered the writ to issue even though an original petition for *mandamus* would not ordinarily be entertained to correct a trial court's exercise of discretion even when

abused. Plaintiff calls to our attention that Owen had requested the court to require the discovery order to be vacated or the action dismissed. He contends that the refusal of the court to order the action dismissed indicates that the supreme court concluded that the communications, although confidential, were not absolutely privileged. However, the supreme court recognized the extraordinary nature of the relief it was granting. To have ordered a then unpleaded cause of action dismissed would have been totally unprecedented and unwarranted. Moreover, both the original and amended complaints alleged that defamatory utterances to others than the JIB had been made.

We find nothing in the *Owen v. Mann* opinion which negates an absolute privilege for the communications to the JIB and consider the opinion to fully support such a privilege. The court described the confidentiality requirement for correspondence with the JIB as serving "to encourage the participation of witnesses by providing protection against retaliation and harassment" thus ensuring that the work of the JIB would not be impeded. (105 Ill. 2d 525, 532-33, 475 N.E.2d 886, 891.) The court also referred to its opinion in *People ex rel. Judicial Inquiry Board v. Hartel* (1978), 72 Ill. 2d 225, 380 N.E.2d 801, where a majority of the court had held that discovery of correspondence with the JIB would be subject to discovery in criminal cases only if due process required it for protection of the defendant. The court explained that, there, a special concurrence had stated that the free flow of information to the JIB depended " 'in part, on a person's expectation of confidentiality to shield him *from possible recrimination by an individual subject to investigation.*' 72 Ill. 2d 225, 245-46, 380 N.E.2d 801 (Moran, J., specially concurring.)" (Emphasis added.) *Owen v. Mann* (1985), 105 Ill. 2d 525, 533, 475 N.E.2d 886, 891.

The language of the supreme court in *Owen v. Mann* is very similar to the language of the appellate court in *Thomas*, which stated that complaints to the EEOC were absolutely privileged, because otherwise:

> "[E]mployees *** might forego the civil rights charge rather than risk having to defend themselves in a retaliatory libel action with the attendant expenses and potential exposure to liability." 125 Ill. App. 3d 415, 422, 465 N.E.2d 1059, 1064.

As we have indicated, plaintiff contends with eloquence that the qualified privilege pronounced in *New York Times* and its progeny is all that complainants before the JIB need to feel free to make valid complaints and that such a qualified privilege would discourage malicious complaints and protect judges. However, the judicial process is not a perfect instrument in determining the truth. Even if it were, the complainant would still need a "shield" giving protection from "recrimina-

tion" or "retaliatory" action which might have no merit. The constitutional provisions creating the JIB as interpreted in *Owen v. Mann* (1985), 105 Ill. 2d 525, 475 N.E.2d 886, would seem to balance the interests in favor of the protection of the complainant as against the possible damage to the judge against whom the complaint is lodged. It would seem somewhat inconsistent to permit the making of the complaint to be a tort against the judge but not permit the judge to discover the documents which constitute the essence of the wrong.

Absolute privilege is granted to the Governor in making statements on matters committed to his responsibility even though the harm to those of whom the Governor speaks may be great. (*Blair v. Walker* (1976), 64 Ill. 2d 1, 349 N.E.2d 385.) As we have shown, absolute privilege is granted to complaints made to courts and quasi-judicial bodies even though the subjects of the complaints may be damaged. Here, the JIB is very similar to a quasi-judicial body. The confidentiality of the proceedings is a substantial, although far from complete, protection to the subject of the complaints. It is far greater than any protection afforded to those subject to defamatory statements by the Governor or by complainants to the courts and quasi-judicial bodies. The possible damage to judges from including the communications alleged in count I with the absolute privilege rule is substantially outweighed by the stated importance of encouraging complainants to speak freely.

This opinion speaks only to the sufficiency of count I. It cannot stand in the face of a motion asserting absolute privilege. Argument has been made concerning statements that might have been made by defendant Owen to other persons or actions he might have taken at other times. This matter is not material to the determination as to the sufficiency of the count.

Accordingly, we hold that communications with the JIB are absolutely privileged against claims of defamation so as to preclude actions for libel or slander based thereon. We reverse the order of the trial court denying defendant's motion to dismiss as it pertains to count I of the amended complaint. We dismiss the appeal from the order on the motion to dismiss as it pertains to count II. We remand to the circuit court of Sangamon County with directions that an order be entered dismissing count I and for further proceedings.

Reversed in part, dismissed in part, and cause remanded with directions.

McCULLOUGH, P.J., and SPITZ, J., concur.