ADCO SERVICES, INC., Plaintiff-Appellee, v. RONALD BULLARD et al., Defendants-Appellants.

First District (2nd Division)    No. 1—92—3405

Opinion filed December 21, 1993.

Matthias & Bellah, of Chicago (Kenneth Bellah, of counsel), for appellants.

Elmore & DeMichael, of Oak Forest (Joseph Daudish and Joseph DeMichael, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff, Adco Services, Inc. (Adco), filed a four-count complaint alleging libel against defendants, Ronald Bullard and A. B. Gamma, Inc., based upon two letters written by Bullard concerning Adco's business operation.

Defendants moved to dismiss Adco's complaint under section 2—619(a)(9) of the Civil Practice Law (735 ILCS 5/2—619(a)(9) (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 110, par. 2—619(a)(9))). After finding that the agencies to whom the letters were written, the Illinois Department of Nuclear Safety (IDNS) and the Central Midwest Interstate Low-level Radioactive Waste Commission (CMILRWC), were quasi-judicial agencies created by statute, the circuit court held, as a matter of law, that Bullard's two letters were not entitled to an absolute privilege, but only to a conditional privilege. The court further held that there was no showing that Bullard's letters were written without malice and denied defendants' motion to dismiss.

Defendants petitioned for leave to appeal from the circuit court's order under Supreme Court Rule 308 (134 Ill. 2d R. 308), which we allowed. Certified for immediate appeal is the following question:

"When the trial court determines, as a matter of law, that Defendants' letters were sent to quasi-judicial agencies of the State of Illinois, are the Defendants' letters entitled to an absolute privilege or merely a conditional privilege?"

Adco is a corporation engaged in business as a broker and transporter of low-level radioactive waste. Adco employed defendant Bullard as a truck driver from 1987 until February 24, 1992. Bullard was required to handle and transport low-level radioactive waste.

Adco's business is regulated by and operated under a license issued by IDNS, which is responsible, under the Radiation Protection

Act of 1990 (Act) (420 ILCS 40/1 *et seq.* (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 111¹/₂, par. 210—1 *et seq.*)), for licensing radioactive material handlers and investigating information concerning violations of the Act and any regulations promulgated thereunder. (420 ILCS 40/12, 26 (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 111¹/₂, pars. 210—12, 210—26).) The Act recognizes that ionizing radiations may be destructive or detrimental to life or health if carelessly employed and may harm the State's environment if improperly used. The specific public policy behind the Act is to prohibit and prevent exposure to ionizing radiation in amounts which are or may be detrimental to health. 420 ILCS 40/2 (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 111¹/₂, par. 210—2).

Similarly, the Central Midwest Radioactive Waste Compact Act provides for a regulatory commission. CMILRWC allows for compliance with the Low-Level Radioactive Waste Policy Act, a Federal act which encourages the development of low-level radioactive waste compacts as a tool for managing such waste. (45 ILCS 140/1 (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 127, par. 63v—1).) The purpose of the compact is, among other things, to provide facilities for the proper management of low-level radioactive waste generated in the region and to protect the health and safety of citizens of the region. (45 ILCS 140/1 (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 127, par. 63v—1).) Among the duties of the CMILRWC is the obligation to adopt a regional management plan designed to ensure the safe and efficient management of waste generated within the region.

Adco's four-count complaint sounding in libel was based upon two letters authored by Bullard. The first letter, dated February 24, 1992, was addressed and mailed to IDNS. It complained about a breakdown in Adco's safety program. The second letter, dated March 25, 1992, was sent to CMILRWC and was an attempt to correct alleged misstatements made by James P. Bell, president of Adco, at his meeting with CMILRWC held on March 17, 1992.

Counts I and II of the complaint purport to state a claim against Bullard for libel *per quod* and libel *per se*, respectively. Counts III and IV purport to state a claim against A.B. Gamma for libel *per quod* and libel *per se*, based upon the doctrine of *respondeat superior*.

## I

Defendants assert that the complaint should have been dismissed because both letters are protected by an absolute privilege. Defendants maintain that absolute privilege is accorded to all actions required or permitted by law in the course of judicial proceedings or quasi-judicial proceedings, as well as actions necessarily preliminary to those proceedings.

Bullard's February 24 letter was addressed to Bruce Sanza, an IDNS inspector. The letter complains about three problems Bullard encountered while working at Adco:

(1) At the end of 1991, Bullard and a co-employee were instructed to pick up a package of radium needles at a hospital in Evanston, Illinois. The needles were not packaged as Bullard was accustomed to seeing them packaged. Bullard's co-employee called Adco's general manager about the lack of proper packaging and was told to package it himself. In February of 1992, Bullard discovered that he had been over-exposed to radiation. No one from Adco had told him of this over-exposure;

(2) Bullard found out that Adco was storing explosives at its place of business and that he had unknowingly assisted in packaging a load of potentially explosive material; and

(3) Adco on February 21, 1991 distributed a memo and confidentiality agreement to all of its employees, the effect of which was allegedly to absolutely prohibit all of Adco's employees from giving any information regarding Adco's business operations. Bullard believed that this memo and confidentiality agreement were at odds with IDNS regulations because they allegedly prohibited employees from reporting to IDNS the existence of unsafe working conditions, license violations or IDNS regulation violations.

Bullard's March 25 letter was addressed to Clark W. Bullard (no relation), chairman of CMILRWC. It complained of three statements made by James Bell of Adco to CMILRWC:

(1) Adco was the only radioactive waste broker in Illinois;

(2) IDNS would be dropping the ball if it did not renew Adco's license because Illinois companies that generate radioactive waste need Adco; and

(3) Adco offers expertise and expensive computer programs to aid IDNS and/or CMILRWC in the interstate and intrastate tracking of radioactive waste drums.

Bullard then averred that the statements were false and misleading for the following reasons:

(1) Chem-Nuclear, U.S. Ecology, SEG and other radioactive waste brokers do business in Illinois;

(2) Adco is no longer needed in Illinois because other radioactive waste service firms in Illinois can provide the services Adco provides; and

(3) Adco's offer to help track radioactive waste was ridiculous because Adco's radioactive material broker's license was under suspension for, among other reasons, not being able to account for 139 containers of radioactive waste.

Defendants assert that absolute privilege should be granted and,

therefore, no cause of action for defamation should lie against them, even if the statements were made with malice. (*Starnes v. International Harvester Co.* (1986), 141 Ill. App. 3d 652, 653, 490 N.E.2d 1062.) Whether a defamatory statement is conditionally privileged is a question of law for the court. *Spencer v. Community Hospital* (1980), 87 Ill. App. 3d 214, 219, 408 N.E.2d 981.

■ Absolute privilege has been extended to communications made to administrative agencies when the agencies are performing a quasi-judicial function. A proceeding by an administrative agency is quasi-judicial when the powers and duties of the agency conducting the proceeding include the power: (1) to exercise judgment and discretion; (2) to hear and determine or to ascertain facts and decide; (3) to make binding orders and judgments; (4) to affect the personal or property rights of private persons; (5) to examine witnesses; to compel the attendance of witnesses, and to hear the litigation of issues on a hearing; and (6) to enforce decisions or impose penalties. (*Kalish v. Illinois Education Association* (1987), 157 Ill. App. 3d 969, 971-72, 510 N.E.2d 1103.) A quasi-judicial body need not possess all six powers; however, the more powers it possesses, the more likely the body is acting in a quasi-judicial manner. *Kalish*, 157 Ill. App. 3d at 972; see *Parrillo, Weiss & Moss v. Cashion* (1989), 181 Ill. App. 3d 920, 537 N.E.2d 851 (letter to the Illinois Department of Insurance was a preliminary step to a quasi-judicial proceeding and, as such, was absolutely privileged); *Kalish v. Illinois Education Association* (1987), 157 Ill. App. 3d 969, 510 N.E.2d 1103 (letter to the Illinois Supreme Court's Character and Fitness Committee, a quasi-judicial body, held absolutely privileged); *Thomas v. Petrulis* (1984), 125 Ill. App. 3d 415, 465 N.E.2d 1059 (holding that the Equal Employment Opportunity Commission is a quasi-judicial body and charges filed with it are absolutely privileged); *Parker v. Kirkland* (1939), 298 Ill. App. 340, 18 N.E.2d 709 (Board of Appeals of Cook County, Illinois, is a quasi-judicial body and communications before it are absolutely privileged); *Kimball v. Ryan* (1936), 283 Ill. App. 456 (Chicago Board of Election Commissioners is a quasi-judicial body and communications before it are absolutely privileged); *Starnes v. International Harvester Co.* (1986), 141 Ill. App. 3d 652, 490 N.E.2d 1062 (Illinois Judicial Inquiry Board is a quasi-judicial body and a letter attacking the integrity of a circuit court judge held absolutely privileged); *Krumin v. Bruknes* (1930), 255 Ill. App. 503 (statements made to the Naturalization Bureau of the Department of Labor, a quasi-judicial body, are absolutely privileged); *Allen v. Ali* (1982), 105 Ill. App. 3d 887, 435 N.E.2d 167 (communications to the Attorney Registration and Disciplinary Commission, a quasi-judicial body, are absolutely privileged).

Adco claims that, assuming *arguendo*, IDNS and CMILRWC are quasi-judicial bodies, defendants have failed to establish that at the time the two letters were transmitted the bodies were performing quasi-judicial functions. The only question certified to this court for appeal, however, was what type of immunity applies to the letters.

Adco further contends that defendants' various statements are beyond the scope of any arguably applicable privilege because the statements were allegedly not pertinent and material to the matter in controversy and if an absolute privilege was applicable to the letters, the privilege would have been lost due to the overly broad and malicious nature of the letters.

■ Our examination of both letters reveals that they address matters that are of direct and immediate concern to the IDNS and the CMILRWC. The IDNS issues plaintiff its license to handle low-level radioactive waste. The IDNS is responsible by statute (20 ILCS 2005/71 (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 127, par. 63b17)) for enforcing all rights, powers and duties vested in the Department of Public Health by the Radiation Protection Act of 1990 (420 ILCS 40/1 *et seq.* (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 111¹/₂, par. 210—1 *et seq.*)). The February 24, 1992, letter to the IDNS complains of three perceived breakdowns or problems in plaintiff's radiation safety program. The public policy behind the enactment of the Radiation Protection Act of 1990 is, in part, "to encourage the constructive uses of radiation and to prohibit and prevent exposure to ionizing radiation in amounts which are or may be detrimental to health." (420 ILCS 40/2 (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 111¹/₂, par. 210—2).) Bullard complained of matters directly within the IDNS' statutory authority and duty to control. The allegedly defamatory matters clearly were connected with or relative to the instant cause. All doubts will be resolved in favor of relevancy or pertinency, for an absolute privilege to apply. (*Harrell v. Summers* (1961), 32 Ill. App. 2d 358, 362, 178 N.E.2d 133.) Statements will be deemed privileged if they have any bearing on the subject at issue. *Macie v. Clark Equipment Co.* (1972), 8 Ill. App. 3d 613, 615-16, 290 N.E.2d 912.

From the foregoing discussion, we reverse, remand and instruct the circuit court that Bullard's letters to the quasi-judicial agencies involved here are entitled to an absolute privilege.

Reversed and remanded with instructions.

McCORMICK, P.J., and DiVITO, J., concur.